## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GUARDIAN INDUSTRIES CORP, ET AL,

            PLAINTIFFS,        CIVIL ACTION No. 03-73722

V.                       HONORABLE ARTHUR J. TARNOW
                           UNITED STATES DISTRICT JUDGE

AFG INDUSTRIES, INC.,

                           MAGISTRATE JUDGE
          DEFENDANT.        R. STEVEN WHALEN

_____/

## ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

| | | |
|---|---|---:|
| **I.** | **Introduction** | 3 |
| **II.** | **Guardian's Motion for Summary Judgment on Infringement** | 4 |
| | **A.**   **Guardian's Dispositive Motion** | 4 |
| | **B.**   **Plaintiffs' Motion to Exclude** | 7 |
| | **C.**   **Defendants' Motion to Strike** | 8 |
| | **D.**   **Conclusion** | 8 |
| **III.** | **Validity** | 9 |
| | **A.**   **AFG's Motion for Summary Judgment of the Invalidity of the '349 Patent as Anticipated by Prior Art 35 U.S.C. § 102(b)** | 10 |
| | **B.**   **AFG's Motion for Summary Judgment of the Non-Infringement or Invalidity of the '608 Patent As Anticipated by the '349 Patent Under 35 U.S.C. § 102(e)** | 14 |
| |     **1.**   **Non-Infringement of the '608 Patent** | 14 |
| |     **2.**   **Invalidity of the '608 Under the Doctrine of Anticipation by the '349 Patent** | 16 |

C.   AFG's Motion for Summary Judgment Invalidity of the '050 Patent for Failure to Satisfy the Written Description and Enablement Requirements Under 35 U.S.C. § 112 .................. 18

    1.   Written Description Requirement ................................... 18

    2.   Enablement Requirement ................................................ 22

D.   AFG's Motion for Summary Judgment on Invalidity of the '349 and '608 Patents for Failure to Satisfy the Written Description Requirement of 35 U.S.C. § 112 ............................ 25

IV.   Guardian's Motion for Summary Judgment on the Validity of the Patents in Suit ................................................................................. 28

V.   AFG's Obviousness Arguments ............................................................. 29

A.   Law On Obviousness ....................................................................... 29

B.   '455 Patent as Anticipatory of the '349 Patent .......................... 32

C.   '349 Patent Invalid as Obvious When '455 Combined with '781 or '256 Patents ................................................................... 32

D.   The '608 Patent Invalid as Obvious in View of the '455 Patent Combined with the '702 Patent ...................................... 35

E.   The '050 Patent Invalid as Obvious in View of the '455 Patent Combined with the '229 Patent ...................................... 36

F.   Miscellaneous Obviousness Arguments .................................... 38

G.   Conclusion ....................................................................................... 39

VI.   Conclusion ............................................................................................... 39

## I.    Introduction

Before the court are the parties' motions for summary judgment involving three patents related to optical coatings placed on glass.   Plaintiff Guardian claims that Defendant AFG has produced two products that either literally infringe or infringe under the doctrine of equivalents three of Guardian's patents, U.S. Patent No. 6,576,349 ("'349"), 6,6886,050 ("'050") and 6,602,608 ("'608").

Each patent arguably involves new solutions to common problems involved with layer coatings placed on glass which seek to reflect infrared radiation while enabling a high amount of visible light transmittance.  Guardian's '349 patent claims to be the "first patent to teach oxidation gradation in the coating layers adjacent to the reflective (e.g. silver) layers on the glass."  These oxidation graded contact layers are meant to provide superior adhesion between the reflective and adjacent layer and better support to the reflective layers during the heat treatment. Guardian's '050 patent claims to be "the first to teach the use of silicon rich silicon nitride layers" which purportedly reduces haze in the glass coating and provides better adhesion between the coating layer to the glass substrate.  Guardian's '608 patent claims to be the "first to teach the use of thin metal or metal nitride protective layer to improve durability of the coating while also preserving transparency."

Guardian's complaint alleges that AFG's Comfort Ti-AC36 ("36TC") and Comfort Ti-AC 40 ("40TC") infringe '349 patent claims 1. 2. 6. 15. 16. 17, 22. 23. 24, 30, 32, 35, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 49, and 52.  Guardian further alleges that AFG's two products infringe '050 patent claims 1, 7, 9, 16, 17, 21 and 23.  Finally, Guardian alleges that AFG's 36TC & 40TC infringe patent '608's claims 1, 3 and 5-11.

## II.    Guardian's Motion for Summary Judgment on Infringement
### A.    Guardian's Dispositive Motion

In support of Guardian's motion for summary judgment on the infringement of the '349 patent, Guardian presents independent XPS sputter depth testing, which measures the levels of substance in a coating, as analyzed by their proposed expert. The expert claims that both of AFG's products, the 36TC and 40TC, have a silver layer (AG) sandwiched between the zinc-oxide layer (ZnO) and an "oxidation graded" nickel chromium oxide layer (NiCrOx).  The testimony supports the contention that the products infringe Guardian's '349 patent.  Guardian also argues and their experts agree that AFG has the necessary equipment to create an oxidation graded contact layer.

Guardian has filed a motion for summary judgment arguing that there are no genuine issues of material fact as to whether AFG has infringed on each of its patents.  This court disagrees.  Not only does AFG produce enough evidence to create genuine issues of material fact as to whether their products infringe

Plaintiffs' patents, the Defendant has in some instances produced enough evidence to create genuine issues of material fact as to whether certain patents' claims are valid.

In response, AFG refutes Guardian's claim that their products include an oxidation graded contact layer.  AFG contends that their production equipment is incapable of producing oxidation graded contact layers since they are unable to produce the necessary asymmetric gas flow system to create the oxidation grading. AFG also relies on proposed expert Dr. Kheyrandish's report to defend against the claim of infringement.  A common theme in all of AFG's responses is Dr. Kheyrandhish's attack on the XPS method of testing as  "scientifically flawed."  In place of the "destructive" XPS test results is the non-destructive RBS and TEM testing, employed by AFG.  In analyzing the TEM testing, Dr. Kheyrandish concludes that AFG's products do not include oxidation graded contact layers.

In terms of the '050 patent, Guardian produces the XPS test results, as interpreted by Plaintiffs' expert, to demonstrate that both AFG products have the same stack structure as the patent's claims: dielectric layer, contact layer, IR reflecting layer, contact layer, dielectric layer, contact layer, IR reflecting layer, contact layer, dielectric layer.  Guardian also points to the XPS testing, AFG's failed patent application, and internal AFG memos to show that the silicon nitride (SiN) layer for AFG's two products both have ratios of silicon to nitrogen within the range described by the Guardian's patent claims.  Guardian's expert casts doubt

upon AFG's claim that the products contain silicon oxynitride as opposed to silicon nitride

In opposition, AFG argues that their products do not include the claimed silicon-rich silicon nitride layer but instead have non-infringing silicon oxynitride layers. AFG again points to its coating process and equipment which introduces "several percent of oxygen into the silicon deposition zones during sputtering of the silicon layers." The XPS testing shows that AFG's products have about 5% oxygen in its silicon layer and both Si-O and Si-N bonds, all of which, AFG claims, supports AFG's position that the layer is a non-infringing oxynitride layer.

As for the '608 patent, Guardian again relies on the XPS testing results as interpreted by the expert to claim that AFG's products infringe on the '608 patent. The expert points to test results which demonstrate that AFG's products: 1) have the same layer structure described in '608's claims; 2) have gradually increasing metallic shoulder as the spectra nears the silver layer; 3) have a metal layer that is nickel (Ni), which has a visible transmission is at last 70% and 75% in certain parts; 4) have a sheet resistance less than 20 ohms/sq; and 5) have dielectric layers comprised of silicon nitride.

In response, AFG argues that their products do not infringe the '608 patent either literally or under the doctrine of equivalents because they do not include a metal or metal nitride contact layer. In support, AFG's claims that their expert's TEM testing gives a more realistic representation of the relative distribution of the

elements.  AFG also claims that their production plants do not have the capability to produce such a product with a deposited metal or metal nitride contact layer. AFG argues that the NiCrOx layers cannot be considered two separate layers (one oxide and a second separate metal/metal nitride layer).  Finally, AFG takes issue with Guardian's argument that the metal/metal nitride layer is different from the oxide layer during the prosecution of the '608 patent application.  This issue is further discussed during AFG's Motion for Summary Judgment Invalidity 35 U.S.C. § 102(e).

### B.    Plaintiffs' Motion to Exclude

It should be noted that Plaintiff has also filed a Motion to Exclude the Testimony of Dr. Kheyrandish , Certain Summary Judgment Exhibits and the Non-Infringement Testimony of Mr. Bjornard and Mr. Grubb.  Plaintiff argues that Dr. Kheyrandish's testimony fails to meet the requirements of *Daubert v. Merrell Dow Pharm., Inc*.. 509 U.S. 579 (1993)  If granted, Defendant's case would be at most skeletal.  At this time, the court **DENIES** Plaintiffs' motion.  The court concludes Defendant's expert has satisfied the requirements of *Daubert* and its progeny. Plaintiff will have the opportunity to point out all their criticisms of Dr. Kheyrandish's testimony and testing at trial, such as that Dr. Kheyrandish is not relying on the industry-standard testing, that these forms of testing relied upon by Dr. Kheyrandish are inferior to XPS testing because they are unable to measure oxygen grading and ultra-thin nickel, that AFG has used XPS testing before, *etc*....

### C.    Defendant's Motion to Strike

For similar reasons, Defendant's Motion to Strike Documents Cited in Support of Guardian's Motion for Summary Judgment of Infringement for lack of proper foundation is also **DENIED**.  The court finds that Plaintiff established a proper foundation for the documents.  Regardless even without the foundation, the court relied on these documents as additional support for an argument and would have made the same decision without the documents.

### D.    Conclusion

Thus, genuine issues of material fact exist to the determination of infringement for each Guardian's three patents.  Both sides have scientific testing as interpreted by experts that contradict each other.  AFG also claims that its equipment and processing leaves them incapable of producing infringing products, whereas Guardian argues AFG is not only capable of producing infringing products but actually produces them.

More specifically, a genuine issue of fact exists in terms of infringement of the '349 patent as to whether the NiCrOx layers in the accused AFG products are "oxidation graded" as argued by Guardian or "uniformly oxidized" as argued by AFG.

A genuine issues of material fact also exists as to whether AFG's products contain a Si-rich silicon nitride layer as argued by Guardian.  AFG claims that they

use a Si-rich silicon oxynitride layer, Guardian argues that AFG's products have a Si-rich silicon oxynitride layer that may include aluminum that oxygen has reacted with.  But even if some of the oxygen has not reacted with the aluminum there is still a claim for infringement under the doctrine of the equivalents.  Thus, summary judgment is not appropriate for the '050 patent either.

Finally, genuine issues of material fact exist as to whether AFG's 36TC & 40TC products contain a metal or metal nitride layer that infringe on the '608 patent.  Guardian and AFG's experts disagree.

## III.   Validity

Once approved by the patent office, a patent is presumed valid. 35 U.S.C. § 282.

> Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of the other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.

*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148 (Fed. Cir. 2004).  The burden on the party challenging the patent is to show by clear and convincing evidence that the patent is invalid. *Helifix Ltd. v. Blok-Lok Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).

### A.   AFG's Motion for Summary Judgment of the Invalidity of the

**'349 Patent as Anticipated by Prior Art 35 U.S.C. § 102(b)**

35 U.S.C. § 102(b) provides that no person is entitled to patent an invention that has been on sale more than one year before filing a patent application. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998). An invalidating sale is one where there was a definite sale, or offer to sell, more than one year before the effective filing date of the U.S. application and subject matter of the sale, or offer to sell, fully anticipated the claimed invention. *Fearag AG v. Quipp, Inc.*, 45 F.3d 1562 (Fed. Cir. 1995). The on-sale bar applies when two conditions are met:

> First, the product must be the subject of a commercial offer for sale...
>
> Second, the invention must be ready for patenting. That condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

*Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998).

Whether an invention was on sale within the meaning of § 102(b) is a question of law based on underlying facts. *Weatherchem Corp. v. J.L. Clark Inc.*, 163 F.3d 1326, 1332 (Fed. Cir. 1998).

AFG argues the '349 patent claims 1, 15, and 16 are invalid under § 102(b) because AFG's prior art satisfies the on-sale bar conditions. AFG began selling this alleged prior art product in the U.S. around December of 1998. Guardian filed its '349 patent application on July 10, 2000. Thus, if the product does exhibit all

the elements of each of the allegedly invalid claims, the first condition is met since AFG's product was in the stream of commerce more than one year prior to the filing date of the '349 patent.  AFG also would be able to satisfy the second condition since AFG reduced the coating to practice prior to the critical date.

The question that remains is whether AFG's product exhibits all of the elements of the '349 patent's claims 1, 15, and 16, *i.e.* whether the prior art would literally infringe the '349 patent if later in time.  *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987).  The sticking point is whether AFG's product contains the "oxidation graded" NiCrOx layer.

AFG's product is, as it claims, a heat treated coated article with a coating that includes an infrared reflecting layer, a nichrome oxide layer, and a silicon oxynitride layer, in which the nichrome oxide layers is sandwiched between and in contact with the infrared reflecting layer and the silicon oxynitride layer. According to AFG, both the NiCrOx and silicon oxynitride layers are deposited with essentially the same type of equipment and essentially the same target materials for both the allegedly infringing products and AFG's prior art.  AFG argues that under Plaintiffs' infringement position and interpretation of oxidation grading, AFG's prior art would have

> included the claimed 'oxidation graded contact layer' feature, the
> claimed 'metal or metal nitride contact layer' feature, and the claimed
> 'Si-rich silicon nitride layer' feature" since essentially the same
> process and equipment are used to create the allegedly infringing

products.

Thus, AFG claims its products must have both an "oxidation graded" NiCrOx layer and a silicon oxynitride layer,

Guardian disagrees that the AFG's "split single silver product built at its Hampton plant" fails to constitute a prior art to the '349 patent's claims. Guardian first points out that none of AFG's three experts testified at deposition that AFG's product had oxidation grading. Defense expert Albany D. Grubb stated in his report,

> [w]hile, in my opinion, the Prior Art AFG Product does not include the claimed 'oxidation graded contact layer' feature, the claimed 'metal or metal nitride contact layer' feature, or the claimed 'Si-rich silicon nitride feature.' applying the Plaintiffs' position that the accused AFG products infringe the asserted claims of the '349, '608 and the '050 patents, the Prior Art AFG Product would have included these claimed features.

After being asked if he believed that the alleged prior art had oxidation grading, AFG expert Herbert Johnson stated, "no, those films were not graded films."

In terms of the manufacturing process, Guardian argues that the experts' opinions regarding essentially the same process and target materials are conclusory assertions without evidence to support. Plaintiffs' expert found significant differences in the set up and operation between Defendant's two production plants including the number of cathodes, the line speeds, the amount of power required from the barrier layers, and the interior surface treatment.

Moreover, Guardian argues that AFG's manufacturing process is irrelevant to the determination of whether the alleged prior art product embodies the claim limitations of the '349 patent.  In *AFG v. Cardinal*, defendant Cardinal asserted that its process of successive deposition of zinc oxide to achieve a thick layer, the court stated that "the method of making is not determinative of the structure and properties of a layer."  71 U.S.P.Q.2d 1678, 1682 (Fed. Cir. 2004).

This court **DENIES** Defendant's Motion for Summary Judgment for Invalidity of U.S. Patent No. 6,576,349 Under 35 U.S.C. § 102(b) as Anticipated by the Prior Art AFG Product.  In order to establish the invalidity of a patent's claim(s), the movant must prove that the patent is invalid by clear and convincing evidence.

AFG's sole evidence to demonstrate that its prior art includes both an oxidation graded NiCrOx layer and a silicon (oxy)nitride is its argument that the equipment and process for creating the coatings for both the prior art and the accused infringing products are "the same or essentially the same."  Thus, if the accused products infringe, then the prior art would have the same structure. Defendant produces neither an expert opinion nor any objective testing to confirm that the prior art includes this oxidation graded contact layer or silicon (oxy)nitride layer.  Defendant has failed to show that its product fully anticipated Guardian's '349 patent by clear and convincing evidence, thus Defendant's Motion for Summary Judgment is **DENIED**.

**B.   AFG's Motion for Summary Judgment of the Non-Infringement or Invalidity of the '608 Patent As Anticipated by the '349 Patent Under 35 U.S.C. § 102(e)**

**1.   Non-Infringement of the '608 Patent**

AFG argues that either it is entitled to summary judgment as a matter of law on the claims that the 36TC and 40TC products infringe the '608 patent or alternatively that the patent is invalid under 35 U.S.C. § 102(e), anticipation by a prior patent.

The '608 patent is directed to a "heat treated coated article" having a metal or metal nitride contact layer. Accordingly, a NiCr layer lies between the AG layer and the NiCrOx layer. This metal or metal nitride is meant to improve durability of the coating which protects the IR reflective layer and improves adhesion between layers, while preserving transparency.

With regard to the non-infringement issue, this court interpreted the term "layer" as "a thickness of material of either a substantially uniform chemical composition or oxidation graded chemical composition which is chosen to provide desired function(s)." AFG argues that this interpretation combined with the '608 patent specification requires the metal or metal nitride layer to be distinct and separate from the infrared reflecting layer and oxidation graded NiCrOx layer. AFG claims that their products do not include this separate "metal or metal nitride contact layer" required by every claim of the '608 patent. According to AFG, no one, including Plaintiffs' experts, believes that the products have this separate and

distinct "metal or metal nitride contact layer" as required by the '608 patent.  In further support, AFG claims that their products could not infringe since their coating process uses a single cathode, a single NiCr target and a single sputter compartment to deposit each of the NiCrOx layers present in the coating stack. Thus, it does not deposit a separate metal or metal nitride contact layer between the Silver and NiCrOx layers.

According to AFG, if Plaintiff alleges infringement under the doctrine of equivalents then Guardian should be  precluded from doing so under the theory of prosecution history estoppel.  Thus, the '608 patent claims should be ruled invalid under § 102(e).  AFG contends that Guardian argued to the patent office throughout the file history that the metal or metal nitride contact layer was separate from the NiCrOx layer.  Moreover, the named inventor testified that the invention was two separate layers.  Thus, AFG argues, under the logic of prosecution history estoppel Guardian should be precluded from arguing that a completely unoxidized NiCrOx layer bordering the silver layer functions as an equivalent to the separate layer involved in the '608 patent.

In terms of AFG's invalidity argument that their product does not literally or under the doctrine of equivalents infringe upon Guardian's '608 patent, the court **DENIES** AFG's motion.  The results of  XPS sputter depth profiling on the accused products as interpreted by Guardian's expert contend that both the heat treated accused products contain "a metal contact layer located directly between

and contacting the silver inclusive layer and the oxide of NiCr" as required by claim 1 of the '608 patent.  AFG admittedly does not dispute the test results.  AFG, at this stage, also does not contest the presence of an alleged "thin region" of metal within the NiCrOx layer.  What is disputed is whether this thin region is a separate layer between the silver and NiCrOx layer and whether there is a metal contact layer between the silver and NiCrOx layer.  This question of fact will be presented to the jury.

### 2.    Invalidity of the '608 Under the Doctrine of Anticipation by the '349 Patent

AFG's prosecution history estoppel argument is also related to its invalidity argument under § 102(e).  § 102(e) states that:

> a person is entitled to a patent unless the invention was described in...
> (2) a patent granted on an application for patent by another filed in the
> United States before the invention by the applicant for patent...

AFG contends that if Guardian is allowed to argue that the '608 patent's claims include a coating where a single oxidation graded NiCrOx with a zero percent oxidized section of the layer that abuts the silver layer, then this would be anticipated as prior art by the '349 patent.  In terms of § 102(e)'s elements, the '349 patent was filed prior to the filing of the '608 patent.  The two patents lack common inventorship.  Most importantly, the '349 patent teaches that the NiCrOx layer can be oxidation graded so that the layer touching the silver layer is zero percent oxidized, meaning in effect NiCr,.  *E.g.* '349, claim 3, 4.

Guardian in defense  points to the fact that the two patents were in examined by the same examiner around the same time and both were approved as patents.

AFG's argument that the '349 patent invalidates the '608 patent under § 102(e) is **DENIED**.  The '608 patent teaches a glass coating that has a separate metal or metal nitride layer between the IR reflecting layer and the NiCrOx layer for superior adhesion.  However, Plaintiff will not be permitted to argue that a glass coating that has a NiCrOx layer whose interface with the AG layer is zero percent oxidized infringes the '608 patent under the doctrine of equivalents since this interpretation would cause the patent to be possibly invalid under § 102(e) because of the '349 claims.  Plaintiff may raise this particular claim as literal infringement of the '349 patent, if they so desire.  Finally, Plaintiff may still argue that AFG's product infringes the '608 patent under the doctrine of equivalents if there is evidence to support this conclusion and the theory is not the above mentioned theory.

**C.    AFG's Motion for Summary Judgment Invalidity of the '050 Patent for Failure to Satisfy the Written Description and Enablement Requirements Under 35 U.S.C. § 112**

**1.    Written Description Requirement**

35 U.S.C. § 112 first paragraph requires that "the specification shall contain a written description of the invention...".  Often known as the written description requirement, its

> purposes are to assure that the applicant was in full possession of the claimed subject matter on the application filing date and to allow other inventors to develop and obtain patent protection for later improvements and subservient inventions that build on applicant's teachings.

3-7 Chisum on Patents § 7.04(footnote omitted).  The Federal Circuit has said:

> When the scope of a claim has been changed by amendment in such a way as to justify an assertion that it is directed to a different invention than was the original claim, it is proper to inquire whether the newly claimed subject matter was described in the patent application when filed as the invention of the applicant. That is the essence of the so-called "description requirement" of § 112, first paragraph

*In re Wright*, 866 F.2d 422, 424 (Fed. Cir. 1989).

The inquiry into whether the written description requirement is met is a question of fact.  *In re Wertheim*, 541 F.2d 257, 262 (CCPA 1976).  "[A]l that is necessary to satisfy the description requirement is to show that one is 'in possession' of the invention."  *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

> One shows that one is "in possession" of the invention by describing the invention, with all its claimed limitations, not that which makes it obvious. ...One does that by such descriptive means as words, structures, figures, diagrams, formulas, *etc.*, that fully set forth the claimed invention. Although the exact terms need not be used *in haec*

*verba*..., the specification must contain an equivalent description of the claimed subject matter. A description which renders obvious the invention for which an earlier filing date is sought is not sufficient.

*Id*.

AFG argues that the '050 patent is invalid for failure to satisfy the written description requirement because the claims are broader than the supporting disclosure. In particular, claims 1-7, 9-17 and 21-24 of the '050 patent do not require the presence of an oxidation graded (nichrome oxide) contact layer despite the fact that the specification "repeatedly asserts" that the coatings achieve high visible transmission. It is this oxidation graded contact layer that "enables" the coated article to achieve these desired properties, thus without this layer, high visible transmission cannot be achieved.

AFG relies on the *Gentry Gallery v. Berkline Corp*. case to support its argument. 134 F.3d 1473 (Fed. Cir. 1998). In *Gentry* the patent in suit was directed to a unit of a sectional sofa where two independent reclining seats face the same direction. The original disclosure and the specification's description of the preferred embodiment of the invention provided for only minor variation on where the console was placed between the two chairs. *Id*. at 1478. In contrast, many of the patents' claims were not so limited and did not mention that the controls were placed on the console. The Federal Circuit reversed the district court's denial of a motion for summary judgment on the basis of the written description requirement

as clear error determining that the disclosure unambiguously limited the location of the controls to the console. *Id.* at 1479.

AFG argues that Guardian's patent claims include the same overreaching. The '050 patent specification unambiguously limits the coatings or coated articles of having heat treatability and high visible transmission which, AFG argues, can only be accomplished through an oxidation graded contact layer. However, certain claims of the patent fail to mention an oxidation graded contact layer. Thus, AFG argues, those claims reach further than the initial disclosure and should be ruled invalid as not satisfying the written description requirement.

Guardian responds by discussing the '349 and '050 patent prosecution histories. In 2000, Guardian filed one patent application, which concerned coated articles. The patent application included certain claims that had oxidation graded contact layers, others claims that had silicon rich silicon nitride layer, and still others that included both oxidation graded contact layers and Si-rich SiN layers. Certain portions of the specification supported one set of claims while other portions supported the other set of claims. The Patent Office determined that there were two inventions in the application and required Guardian to pursue each invention separately, a coated article having an oxidation graded NiCrOx layer in one patent (the '349) and a coated article having a silicon-rich silicon nitride layer in a divisional patent (the '050 patent).

The Patent Office divided the two patents because they were distinct and

separate from each other.  Thus, the '050 patent is a "divisional patent" of the '349 "parent patent."  According to Plaintiff, a divisional patent by definition shares the same specification as its parent patent but includes different claims.

The '050 patent was approved and like the originally filed patent application the claims describe coatings for classes of coating that both include and do not include oxidation graded NiCrOx layers.

Under Federal Circuit case law, "[t]he original claims as filed are part of the patent specification."  *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 938 (Fed. Cir. 1990).

> The [written] description requirement comes into play when a claim is added by an applicant for a patent at some stage after the original filing date and the claim differs in scope from the original claims.

3-7 Chisum on Patents § 7.04

The court believes that the *Gentry* case is distinguishable.  The broadest originally filed claim in *Gentry* required the controls to be on the center console, but later in the prosecution the patentee broadened the claims to cover its competitor's product, *i.e.* not on the console.  134 F.3d at 1479.  The Federal Circuit determined that the broadened claims were not supported by an adequate written description.  *Id.* at 1480.

That situation is not present here.  Guardian did not amend its clams to broaden them beyond the scope of what was originally disclosed in the patent

application.  The original 37-43 claims and 70-78 claims of the '349 parent application do not require the coated article to include a layer of oxidation graded NiCrOx.  Thus, this is not the situation where a patentee later broadens his/her claims after the filing of the original application.  These pages expressly convey to one of ordinary skill that the inventors were "in possession" of a coated article comprising a layer of silicon rich silicon nitride that did not require a layer of oxidation graded NiCrOx.  AFG has not satisfied the clear and convincing burden to invalidate the patent claims under the written description requirement.  The court **DENIES** AFG's Motion for Summary Judgment on Invalidity of the '050 patent on the basis of the written description requirement under § 112.

### 2.   Enablement Requirement

The first paragraph of § 112 has another requirement besides the written description requirement.  The patent application shall contain:

> the manner and process of making and using the invention in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected , to make and use the same.

The enablement requirement is a legal issue based on the underlying facts.  *In re Wands*, 858 F.2d 731, 735 (Fed. Cir. 1988).  The Federal Circuit has clarified that the § 112:

> requires that the patent specification enable those skilled in the art to make and use the full scope of the claimed invention without undue

experimentation in order to extract meaningful disclosure of the
invention and, by this disclosure, advance the technical arts

*Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1070 (Fed. Cir.
2005)(citation omitted).

AFG argues that it is entitled to summary judgment based on invalidity of
the aforementioned '050 patent claims because the patent claims and specification
fail to satisfy the enablement requirement of 35 U.S.C. § 112.  AFG again argues
that the '050 claims are broader than the invention described in the patent
specification.  The specific claims at issue do not require the presence of an
oxidation graded contact layer.  The examples and embodiments cited in the '050
patent contain at least one oxidation graded NiCrOx layer.  Yet, the claims at issue
achieve the desired optical properties after heat treatment without this layer.  Thus,
AFG argues, one skilled in the art would be unable to make and use a coated article
having the desired properties of heat treatability and high visible transmission in
the absence of an oxidation graded contact layer.

Guardian acknowledges that the '050 patent discloses coatings having a
silicon-rich silicon nitride layer with or without an oxidation graded contact layer.
In *United State v. Telectronics*, *Inc.*, the Federal Circuit noted that claims are not
limited to the preferred embodiment of the invention.  857 F.2d 778 (Fed. Cir.
1988).  Guardian similarly argues that the '050 specification teaches the general
manner of ascertaining such coated articles via a series of examples.  Using these

teachings, one of skill in the art could make and use a coated article including a silicon rich silicon nitride layer and not including an oxidation graded NiCrOx layer.  Plaintiffs' expert opines that the '050 patent has "cook-book" type examples that set forth materials, times, temperatures, gas flows, power, voltages and frequencies in great detail allowing for one skilled in the art to recreate the patent.

The court **DENIES** Plaintiffs' motion for summary judgment **WITHOUT PREJUDICE**.  The court will permit the fact finder to provide answers to unresolved questions of fact the underlie the enablement question.  The underlying fact question that remains as to claims 1-7 is whether Plaintiff has produced or can produce a coating that includes a silicon-rich silicon nitride layer that is both heat treatable and has a high visible transmission of at last 70%, a T solar of no greater than 50%, and R solar of at least 26% and a sheet resistence of no greater than 8.0 ohms/sq.  Claims 9-17 and claims 21-24 do not claim to have either heat treatability or have a high visible transmission, thus the specification does enable one skilled in the art to determine how to create without undue experimentation.

**D.  AFG's Motion for Summary Judgment on Invalidity of the '349 and '608 Patents for Failure to Satisfy the Written Description Requirement of 35 U.S.C. § 112**

AFG argues that it is entitled to summary judgment of invalidity of the entire '349 and '608 patents for failure to satisfy the written description requirement

under 35 U.S.C. § 112.  AFG contends that the patents' claims and specifications fail to establish to a person having ordinary skill in the art that the inventors were in possession of a "heat treated" coated article that included, *inter alia*, an oxidation graded contact layer or metal/metal nitride layer at the time of the patent application filings.

AFG points to the  prosecution of the '349 and '608 patent application.  The patent examiner rejected claim 1 of the originally filed '349 patent as being obvious under § 103(a) in view of the prior art of Guieselin and Browning combined.  The originally filed claim 1 was later amended by the inventors to recite a "heat treated" coated article having a stack structure including *inter alia* an oxidation graded NiCrOx layer.  AFG argues that the approved patent's specification discloses the stack structure prior to the heat treatment, however, the specification fails to disclose the stack structure of any coated article ***after*** heat treatment.

 AFG argues that Guardian was able to get around an obviousness objection under § 103(a) during the patent prosecution because the inventors determined that the stack structure of the prior art after heat treatment of the NiCrOx layer would become uniformly oxidized.  AFG believes that Guardian is required to discuss what the stack structure of their products are after heat treatment.  Therefore, according to AFG, Guardian failed to describe the effects of the heat treatment to the coating, including failing to describe the specific stack structure thereby failing

to satisfy the written description requirement of § 112 pp1.  For similar reasons, AFG argues that the '608 patent is invalid for lack of written description.

AFG is correct when it states that patent prosecution of claim 1 of the originally filed '349 patent was later amended to include "heat treatment." However, it is clear from the originally filed patent application that the inventors were in possession of this technology and that the "heat treatment" was not some afterthought allowing Guardian's claims to appear novel to the patent examiner. The Title of the originally filed application was "Heat Treatable Low-E Coated Articles and Methods of Making the Same."  Beginning with claims 31-49 of the originally filed patent application, all of the claims describe coated articles that were heat treated with oxidation graded contact layers, which is the foundation for the later approved '349 patent.  The originally filed claims 65-70 are the foundation for silicon-rich silicon nitrides that would later become the '050 divisional patent.

The prosecution history of the patent includes Guardian's amendment where the inventor states the Guiselin and Browning prior art of an oxidation graded NiCr layer (as the result of the SiON sputtering) would become uniformly graded after heat treatment "due to the large amount of oxygen present in the SiON layer."  In contrast, the inventor explained, heat treating the coated article of amended claim 1would not cause the oxidation layer to uniformly oxidize:

[w]hen the nitride layer is sufficiently nitrided for... This is because

the amount of oxygen which can diffuse into the NiCr inclusive layer is reduced.  While the oxide of the NiCr layer may undergo some phase separation (Ni vs Cr) due to HT, there would still be some grading present... Accordingly, it can be seen that the invention of claim 1 differs from the alleged Section 103(a) combination in that the invention fo claim 1 includes a layer comprising oxidation grading after HT, whereas the alleged Section 103(a) combination fails to disclose or suggest a layer comprising oxidation grading after HT.

The '349 and '608 patents do describe the visible transmittance, the reflectance percentage and the sheet resistance of the coatings of certain embodiments of the invention.  Table 6 of the '349 patent describes both the before and after heat treatment properties of examples 1-3.  Column 19 lines 17-19 describe how heat treatment is performed on certain coated articles.  In Table 7, the transmittance of the glass, the reflectance as viewed from the glass, and the reflectance as viewed from the film/coating are measured for all three examples post heat treatment under different conditions.  The '608 patent also incorporated by reference the disclosure of the '349 patent.  Furthermore, the '608 patent included embodiments that may or may not be heat treated.

Drawings of the stack structures after heat treatment are not necessary to describe claims drawn to a layered structure.  Both  patents' specifications convey to one of skilled in the art that the inventors were in possession of the claimed invention at the time the application for the '608 and '349 patents were filed.  The inventors knew the optical properties, they discussed the way in which the articles were heat treated (temperature, length of time), and Guardian was able to

distinguish from prior art why the stack structure would for the most part remain in tact after heat treatment.  AFG has failed to satisfy the difficult "clear and convincing" standard to invalidate a patents under § 112 the court **DENIES** AFG's Motion for Summary for the invalidity of the '349 and 608 patents on the basis of failing to satisfy the written description of § 112.

## IV.   Guardian's Motion for Summary Judgment of the Validity of the Patents in Suit

Plaintiff seeks to have this court enter summary judgment of validity of the patents in suit under 35 U.S.C. §§ 102, 103 over the prior art cited by AFG. Guardian argues that AFG fails to cite any prior art reference having all the elements of any claim of the patents in suit.  Moreover, the primary prior art reference relied upon by the Defendant for their obviousness arguments was already considered by the US Patent and Trademark Office.  Guardian's claims of the patents-in-suit were found to be patentable over the cited prior art.

Again, AFG's burden of successfully challenging the validity of a patent is high, clear and convincing.  As previously discussed, this court believes that questions of fact remain as to the validity of some of the patents.  Thus, this court will not make an advisory opinion as to the validity of the patents.  Even if AFG fails to support their challenge to the validity of the patents, other future challenges may be successful.  Thus, this court would still refrain from ruling in favor of Plaintiffs' motion for summary judgment on the validity of the patents.  Plaintiffs'

motion is **DENIED**.

## V.    AFG's Obviousness Arguments

### A.    Law on Obviousness

To prove a patent invalid for obviousness, a party must prove that the claimed invention as a whole would have been obvious to a person of ordinary skill in the art when the invention was patented by clear and convincing evidence. *Sibia Neurosciences, Inc. v. Cadus Parmaceutical Corp.,* 225 F.3d 1349, 1355 (Fed. Cir. 2000).  The obviousness determination is a matter of law for the court to decide based on underlying questions of fact.  *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

> The legal conclusion, that a claim is obvious within § 103(a), depends on at least four underlying factual issues: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) evaluation of any relevant secondary considerations.

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1336 (Fed. Cir. 2005).  The patent challenger's "burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application."  *Hewlett-Packard Co. v. Bausch & Lomb Inc.*. 909 F.2d 1464, 1467 (Fed. Cir. 1990).

It is clear that the patents at issue were novel, *i.e.* that there were physical differences between what they claim and the prior art.  The obviousness of the a novel structure though requires the court to not only consider the physical difference but also the differences in effect or function.

For the most part AFG's obviousness arguments rely on the combination of other patents, products or teachings within the art to ask this court to invalidate Guardian's patents.  The Federal Circuit has noted that "[m]ost inventions arise from a combination of old elements and each element may often be found in the prior art.  *In re Kahn*, 441 F.3d 977, 986 (Fed. Cir. 2006).  In part due to this combining prior art invention,

> However, mere identification in the prior art of each element is insufficient to defeat the patentability of the combined subject matter as a whole. Rather, a party alleging invalidity due to obviousness must articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious.
>
> This 'motivation-suggestion-teaching' test asks not merely what the references disclose, but whether a person of ordinary skill in the art, possessed with the understandings and knowledge reflected in the prior art, and motivated by the general problem facing the inventor, would have been led to make the combination recited in the claims.

*Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, ___ (Fed. Cir. 2006)(citing *Kahn*, 441 F.3d at 986, 988).

AFG relies upon Patent 5,376,455 ('455) as its primary reference in its attempt to invalidate the claims of the patents-in-suit as obvious and anticipated.  The '455 prior art teaches a heat treatable coated article that includes a coating supported by a glass substrate.  The optical coating contains *inter alia* a nichrome oxide layer next to the infrared reflecting (*e.g.* silver) layer.   The US Patent and Trademark Office ("PTO") considered a divisional patent of the '455 patent, the

'902 patent which had the same specifications as the '455 during the prosecution of Guardian's patents.  The PTO concluded that the claims of Guardian's patents in suit were patentable over the teachings of the '902 patent.  Neither the '902 nor the '455 patent teach or suggest oxidation grading the NiCrOx layer, a silicon-rich silicon nitride layer, a metal or metal nitride barrier live, or a double silver stack layer.

AFG suggests that the '455 patent combined with other prior patents render Guardian's patents invalid as obvious.  AFG's sole evidence of motivation to combine the '455 patent with other patents is in the form of a hind-sighted, proposed expert report of Mr. Brjornard, who merely concludes persons of ordinary skill would have been motivated to combine the '455 patent with the other patents.

Guardian argues that the '455 patents is useless as prior art since the PTO already considered it.  Guardian further contends that AFG has not satisfied its burden of proving motivation to combine the '455 patent with any of the other patents/articles because the prior patents were created to serve different functions.

AFG's proposed expert testimony is comprised of speculative conclusions having only compared the prior art products to Guardian's patents without additional support.

**B.** **'455 Patent as Anticipatory of the '349 Patent**

Although not argued at oral argument, AFG in its brief contends that the '455 patent anticipated the '349 patent despite the fact that the '455 patent had been considered by the Patent Examiner.  Even if the PTO had not considered the '455 patent, the '455 patent is not anticipatory.  The '455 patent has a different layer stack, there is no suggestion of an oxidation graded NiCr layer, and there is no double silver layer.  The glass was also considered to have a "rather high emissivity," unlike the low emissivity glass that is created with Guardian's patents.

### C.     '349 Patent Invalid as Obvious When '455 Combined with '781 or '256 Patents

According to AFG, the US. Patent 5,067,781 and British Patent 2,126,256 patents teach oxidation grading a metal oxide layer in an optical thin film coating in order to withstand heat treatment in terms of mechanical and chemical durability as well as allowing the glass to achieve desired optical performance.   AFG's expert Mr. Brjornard in an appendix to his report lists the '349 claims and cross-references the individual claims of prior art in order to argue that the '349 claims are invalid as obvious.  AFG's expert concludes that a person of ordinary skill in the art would have been motivated to oxidation grade the nichrome layer in the '455 patent in the same ways as either the '781 or '256 patents.

> The person of ordinary skill in the optical thin film coating art would have been motivated to oxidation grade the nichrome layer in the coating disclosed in the '455 patent as described in the '781 patent or in the '256 patent in order to facilitate the mechanical and chemical

durability, while at the same time enabling the coating to achieve the desired optical performance characteristics and, further, would have had a reasonable expectation that this oxidation graded nichrome layer would facilitate the mechanical and chemical durability, while at the same time enabling the coating to achieve the desired optical performance characteristics.

The expert quotes this exact language in discussing the motivation and expectation of success of combining the '455 patent with the '256 patent. Thus, AFG concludes, the '349 patent is invalid as obvious since: 1) the '455 patent in combination with either the '781 or '256 patents contain all the claims of Guardian's 349 patent; 2) it was obvious to someone skilled in the art to combine the patents; 3) there was motivation to combine the two; 4) and there was a reasonable expectation of success.

Guardian's response focuses on the different functions that the different patents were designed to address. The '349 patent claims included at least one oxidation graded contact layer to provide superior adhesion between the reflective and adjacent layer and better support to the reflective layers during the heat treatment. The '455 patent addressed the problems of film adherence and durability during heat treatment. Thus, Plaintiff is correct when he states that there was no further motivation to turn the '781 patent to address film adherence and durability issues since the '455 patent already addressed those problems. The '781 teaches the grading of the refractory oxide coatings (not NiCrOx) to increase film adhesion. Moreover, the '781 patent was designed to transmit IR radiation, rather

than reflect IR radiation like the '455 patent, the '349, the '608, and the '050 patents. Thus motivation to combine to the patents would be even less.

As for the '256 patent, again Guardian argues that there would have been no motivation to combine the '455 patent with any other patent to make the '349 patent obvious, since the '455 patent addressed the problems of film adherence and durability. The '256 patent does not disclose or suggest a NiCrOx layer, nor does it suggest oxidation grading. The '256 patent was directed to solve problems via interfacial bonding. Other differences include that the '256 films are not low-E glass. Thus, Guardian claims there is no motivation to combine the '455 patent with either the '781 or the '256 patents.

In terms of obviousness, there is no comment in the '455 patent to direct it to either the '781 or the '256 patent for modifications or improvements. The '455 patent was a solution to mechanical and chemical durability after heat treatment. The problem with the '455 patents was its high emissivity which was solved by Guardian's '349 patent. Again, "mere identification in the prior art of each element is insufficient to defeat the patentability of the combined subject matter as a whole." *Abbot Labs*, 431 F.3d at _____ (citation omitted). AFG has failed to articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claim obvious. Thus, AFG has failed to sustain the clear and convincing burden of proving that the patent is invalid as obvious. The same can be said for all of AFG's obviousness arguments.

### D.  The '608 Patent Invalid as Obvious in View of the '455 Patent Combined with the '702 Patent

AFG claims that the '455 patent in combination with U.S. Patent No. 5,935,702 (the '702 patent) renders the '608 patent invalid as obvious. According to AFG, the '702 patent establishes that it was well known in the art to include a very thin metal protective layer between and in contact with an infrared reflecting layer and an oxide barrier layer, which ensures the temperability or the curvability of the stack without modifying its properties, in an optical coating like the '455 patent. Again AFG's expert mirrors the '608 patent claims with combinations of the '455 and '702 patents claims to contend that a person of ordinary skill would have been motivated to combine the two patents.

Guardian first argues that there was no suggestion or motivation to combine the two patents. Secondly, Guardian claims even if the two patents were combined, the references fail to teach all the claims of the '349 invention. For example, the'702 patent does not teach an oxidation graded NiCrOx layer. Moreover, the '702 patent determined that although one of the comparative examples could preserve the thermal performance "it is not the same as concerns the optical aspect" which had large variations in color before and after tempering. To the inventors, this comparative example "showed the limits of such a solution" determining that the difference was "in all probability due to the oxidation of the Ni/Cr layers on both sides of the silver layer."

Again, Defendant has failed to satisfy the clear and convincing burden to

prove that Guardian's patents are invalid as obvious. AFG's expert testimony merely asserts a motivation and combines the functions of each of the layers. Moreover, the expert fails to discuss why there might be a motivation to use oxidation grading when the inventors of the '702 previously determined that oxidation grading the Ni/Cr layer poorly affected the optical aspects of coatings.

### E.   The '050 Patent Invalid as Obvious in View of the '455 Patent Combined with the '229 Patent

AFG contends that the claims of the '050 patent are invalid as obvious because an ordinary person skilled in the art would have been motivated to combine the '455 patent with U.S. Patent No. 5,543,229 (the '229 patent) as supported by the Palik Handbook and the Trube article. The '455 patent includes a first layer of Si3N4, noting that the layer can be silicon rich. The Palik Handbook discloses the optical constants of silicon nitride and silicon metal. The '229 patent discloses a coated article that is heat treatable and includes a coating that comprises a solar control layer and a protective coating layer which may be silicon. According to AFG's expert, a person of ordinary skill in the art would have been motivated to use a silicon rich silicon nitride layer in the coating of the '455 patent, as taught in the '229 patent, in order to facilitate durability while achieving the desired optical goals. According to AFG, the Palik handbook and the Trube article provide additional evidence one's motivation to use the silicon-rich silicon nitride layer and the expectation that it would facilitate the desired properties.

Yet neither AFG nor their expert explain why a person skilled in the art

would be motivated to combine the '455 patent with a patent that is not designed for high visibility glass.  The expert merely skirts the issue stating, "this invention is applicable so far as the film is transparent in the visible light region."   A feature of the '229 patent concerns silicon rich silicon nitrides, but they do not allow for a level of visibility suitable for a windshield.  Moreover, the protective layers of the '229 patent are combinations of nitride, not an oxygen graded NiCr layer.  Plaintiff has not met the clear and convincing burden to invalidate Guardian's patent. Plaintiff has failed to demonstrate a motivation required to invalidate a patent based on obviousness.

The same is true when considering both articles suggested by AFG.  AFG simply argues that there would have been motivation to supplement the Palik Handbook teachings of silicon rich silicon nitride with that of the '455 patent. Similarly, AFG argues that the Trube article could supplement the'455 patent with a teaching of a single layer of silicon nitride.  Yet both articles merely are reference tables without evidence of motivation, inspiration or capability.  The Palik Handbook is a compilation of optical constants of a wide variety of solid materials, not just silicon nitride.  The Trube article is a reference table which purports to show an index of refraction for Si3N4 at different chamber pressures and flow rates.  Trube discloses graphs of the  indices of refraction or extinction of coefficients in a layer system with an IR reflective layer or contact layer. Defendant has again failed to demonstrate that Plaintiffs' patent is invalid as

obvious with clear and convincing evidence.

### F.    Miscellaneous Obviousness Arguments

Defendant's final arguments based on obviousness are even more remote. Either the combinations fail to teach all the claims of the patents or AFG fails to produce clear and convincing evidence of a motivation to combine inventions. Defendant argues that the teachings of the '702 patent combined with U.S. Patent No. 6,340,529 (the '529 patent) and the '455 patent.  However, the '529 patent does not teach an oxidation graded NiCr layer and instead creates a substantially complete oxidation of all the barrier layers.  AFG argues that the '872 patent could supplement the '455 patent with a teaching of a Ti02 layr.  Guardian argues there is no evidence or reason to believe that the one of ordinary skill would choose Tio2 from all the possible art compounds without having a specific teaching reference suggesting it.

### G. Conclusion

Defendant has failed to produce any clear and convincing evidence that it would have been obvious to a person skilled in the art that any of Guardian's three patents were obvious based on combination of prior art.  Thus, Defendant's Motions are **DENIED**.

### VI.    Conclusion

For the reasons stated above,

2:03-cv-73722-AJT   Doc # 150   Filed 09/19/06   Pg 39 of 40   Pg ID 2414

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment [D/E # 73] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment of Validity of the Patents [D/E # 75] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude the Testimony of Dr. Kherandish, Certain Summary Judgment Exhibits, and Non-Infringement Testimony of Mr. Bjornard and Mr. Grubb [D/E # 126] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment of Invalidity of the '349 and '608 Patent for Failure to Satisfy the Written Description Requirement of 35 U.S.C. § 112 pp 1 [D/E # 69] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment of Invalidity of the '349 Patent under 35 U.S.C. § 102(b) as Anticipated by the Prior Art AFG Product [D/E # 81] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment of Non-Infringement, or Alternatively For Invalidity Under 35 U.S.C. § 102(e) of the '608 Patent [D/E # 82] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment of Invalidity of '050 patent for Failure to Satisfy the Written Description and Enablement Requirements of 35 U.S.C. § 112 pp 1 [D/E # 70] is **DENIED WITHOUT PREJUDICE** with the relation to the enablement requirement and

Page 39 of 40

**DENIED** with relation to the written description requirement.

　　　**IT IS FURTHER ORDERED** that Defendant's arguments of invalidity based on obviousness are **DENIED**.

　　　**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude the Documents Cited in Support of Guardian's Motion for Summary Judgment of Infringement for lack of proper foundation is **DENIED**.

　　　**IT IS SO ORDERED.**


　　　　　　　　　　s/Arthur J. Tarnow　　　　　　　　　　
　　　　　　　　　　Arthur J. Tarnow
　　　　　　　　　　United States District Judge

Dated:  September 19, 2006

　　　　　　　　　　　　　　　　　　　03-73722


I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2006, by electronic and/or ordinary mail.

　　　　　　　　　　s/Theresa E. Taylor　　　　　　　　　　
　　　　　　　　　　Case Manager